IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. ROEPKE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NATHANIEL L. ROEPKE, APPELLANT.

Filed July 30, 2024.    No. A-23-966.

Appeal from the District Court for Buffalo County: JOHN H. MARSH, Judge. Affirmed.

Delaney D. Behrendt, Deputy Buffalo County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Nathaniel L. Roepke pled no contest to one count of attempted first degree sexual assault of a child and one count of resisting arrest. The Buffalo County District Court sentenced him to 4 to 7 years' imprisonment on the attempted sexual assault and 1 year of imprisonment on the resisting arrest, to be served concurrently. Roepke appeals, claiming that the district court erred by denying his motion to continue sentencing to allow him time to complete an evaluation for the presentence investigation report (PSR). He also claims that his trial counsel was ineffective. We affirm.

## BACKGROUND

On July 26, 2022, the State filed an information charging Roepke with four counts: count I, attempted first degree sexual assault of a child, a Class II felony, pursuant to Neb. Rev. Stat. "§ 28-201 & 28-319(1)(b)" (Reissue 2016) (we note that first degree sexual assault of a child is

- 1 -

actually Neb. Rev. Stat. § 28-319.01(b) (Reissue 2016) and that the charging language in the information matches this statute; it appears that the use of § 28-319(1)(b) was a scrivener's error); count II, third degree sexual assault, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-320 (Reissue 2016); count III, obstructing a peace officer, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-906 (Reissue 2016); and count IV, resisting arrest, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-904 (Reissue 2016).

On May 12, 2023, the State filed an amended information, again alleging counts I and IV above, but dismissing counts II and III. At a hearing held that same day, Roepke's counsel informed the district court that a plea agreement had been reached. Counsel stated that Roepke would enter a plea of no contest to count I (attempted first degree sexual assault of a child) and count IV (resisting arrest) of the amended information. And "[w]hile there is no agreement on a sentencing recommendation, the State has agreed to recommend no more than five to six years with both -- with a sentence on both counts running concurrently." Roepke confirmed that this was his understanding of the plea agreement. The court advised Roepke of the nature of the charges against him and the possible penalties, as well as the various rights he would be waiving by pleading no contest (including the right to a trial by jury). After being informed of such, Roepke entered a plea of no contest to counts I and IV in the amended information.

The State provided the following factual basis for the plea:

[O]n May 21st of 2022, at approximately 2:09 a.m., officers with the Kearney Police Department were dispatched to [an address] in Kearney, Nebraska, reference [sic] an uncontrollable male inside the residence. Upon arrival they met with the reporting party identified in the amended information by her initials, S.H., who advised officers that her uncle, who was later identified as . . . Roepke, was naked inside the house destroying things and he was trying to enter her grandmother's bedroom armed with a knife.

S.H. pointed to an exterior door on the residence saying that that was the primary door. Officers approached and pushed that open, again yelling for the defendant to come out with his hands up. They continued to yell instructions, also being advised that there were several firearms inside the residence.

A short time later a male subject was identified leaving the house, walking out the west side of the residence and attempting to get into the officer's patrol car. He also then charged out [sic] the officers, who then deployed a taser in an attempt to subdue Mr. Roepke.

Mr. Roepke continued to physically resist from [sic] officers. Officers were able to eventually take the defendant to the ground, although he continued attempting to get away from them and yell. Officers noted that Mr. Roepke was very sweaty at that time, so they called an ambulance believing that he was under the influence of a controlled substance.

In an interview with S.H. in an attempt to identify what had happened prior to . . . their arrival, she stated that she had been asleep in her bed, was woken up to loud banging noises coming from inside the residence. She exited her bedroom and observed [Roepke] completely naked destroying things. She then attempted to address him to tell him to stop.

He then began approaching her, where she ran back into her bedroom. He grabbed her and then pinned her to the bed and told her to . . . "fuck him". She tried to get away

from him and tried to grab her cell phone, at which time he also grabbed her buttocks and again told her to . . . "fuck him".

She was able to get her phone away and call her mother, stating that . . . "Mom, Nathan is trying to" . . . "fuck me". She was then instructed to call 911, which she did. And at that time was when she then observed [Roepke] trying to get through her grandmother's door with a knife. Officers did observe a large sweat stain in the shape of a human body on the sheets of the bed consistent with her statement.

Mr. Roepke is an individual that is 25 years of age or older with a date of birth of February . . . 1986; and S.H. at that time was a person born in 2006, making her at least 12, but less than 16 years of age. Those events occurred in Buffalo County, Nebraska.

The district court accepted Roepke's pleas of no contest to the charges in counts I and IV in the amended information and "entere[d] conviction" for the same. The court ordered a PSR "that would include a sex offender evaluation and told Roepke that it was "going to add to [his] bond that [he] contact Probation to do the evaluation." (The court's written journal entry stated that the "Presentence Investigation, at the discretion of a probation officer, shall include: **Sex Offender Evaluation**[.]" (Emphasis in original.)) Sentencing was scheduled for July 25, 2023.

On July 20, 2023, Roepke filed a motion to continue the sentencing hearing because his counsel had "a scheduling conflict." The court granted the motion that same day and rescheduled the sentencing hearing for September 1.

On September 1, 2023, the district court entered a journal entry stating that a hearing was held that day and Roepke requested the matter be continued to allow for additional time to complete the presentence investigation; the State objected. The court stated that it heard argument from counsel and that "[f]ollowing hearing and upon consideration," the court continued sentencing to November 1. The court released Roepke "on his current bond with the added condition that he contact the State Probation office to begin the presentence investigation and attend all appointments as directed by Probation."

On October 17, 2023, Roepke filed a motion to continue the sentencing hearing scheduled for November 1 because "additional time is needed to complete evaluations."

At the hearing on November 1, 2023, the district court heard arguments on Roepke's motion to continue. Roepke's counsel argued that "Roepke took his paperwork in to Probation" on September 14, "but for a month there was . . . no communication," then counsel's office "was notified on October 17th that Mr. Roepke could not be scheduled for an evaluation because the first available day was October 30th, which wouldn't have allowed for the evaluation report to be done in time for today." Counsel said that "if the Court feels like Mr. Roepke is the problem in terms of scheduling, he is willing to ask the Court to revoke his bond and remain in jail for the period it takes to get the evaluation completed." The State objected to "another continuance" and argued that Roepke "had ample opportunity to present himself to the Department of Probation, because he decided to wait almost two weeks to get that appointment scheduled they weren't able to get the presentence done in time, is my understanding." The State said that the "victim in this case has been, as far as I know, still living out of home based on this case, which occurred back in 2022" and additionally, "the State is entitled to have a speedy resolution to this case." The court overruled Roepke's motion to continue sentencing.

The district court then heard arguments regarding sentencing. Roepke's counsel asked that the court consider a term of probation. Counsel noted Roepke's history of drug and alcohol abuse, his maturity level, and his remorse "knowing that he engaged . . . in conduct under the influence that I think all of his family would agree he wouldn't have otherwise engaged in, and knowing that he hurt people . . . that are close to him has been very difficult." Counsel stated that Roepke's family had been "as supportive as they can be balancing the interest of him . . . and his niece who was harmed." Counsel also stated that Roepke completed treatment and had been sober for 134 days, and he had three children to support.

The State did not believe that Roepke was an appropriate candidate for probation. It noted the "very generous plea agreement," including its recommendation of "a sentence of five to six years with both counts running concurrently." The State also noted Roepke's "fairly length[y] criminal history, including several prior assaults" and a "charge of obstructing" and that Roepke had sentences of probation revoked in the past; the nature of the current case; and the effect of the incident on the victim. The State argued that Roepke "really hasn't taken his sobriety since he's gotten out of treatment very seriously," and he "didn't make showing up for the presentence a priority." The State requested a straight sentence.

Roepke personally addressed the district court stating, "I know what happened was very bad, although I -- I don't recall what happened"; he just remembered "waking up in the hospital and being pretty beat up." When he subsequently heard the charges read in court, he "was in disbelief because [he had] never hurt a kid in [his] life." He said he "should not have consumed the LSD that [he] did." Roepke had "done a lot of reflecting" and the "best way I can apologize is by . . . changing my life, not depending on alcohol or drugs . . . to run away from my emotions."

The district court, which had reviewed the PSR, stated:

> Mr. Roepke, I do find that the State's offer, the term, generous, I think is apt. I do find this is the kind of offense -- if we were here on something else, probation would be appropriate, but I do find that a sentence of probation would depreciate the seriousness of your conduct and promote disrespect for the law.
>
> I'm going to depart just a little bit from this recommendation.

It then sentenced Roepke to 4 to 7 years' imprisonment for attempted first degree sexual assault of a child, and a concurrent sentence of 1 year of imprisonment for resisting arrest; he was given 144 days' credit for time already served.

Roepke appeals from the November 1, 2023, sentencing order.

## ASSIGNMENTS OF ERROR

Roepke assigns that (1) the district court erred by denying his motion to continue to allow him time to complete an evaluation for the PSR and (2) he received ineffective assistance of counsel "[d]uring the [p]endency of the [c]ase."

## STANDARD OF REVIEW

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017). A judicial abuse of discretion exists only when the reasons or

- 4 -

rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## ANALYSIS

### MOTION TO CONTINUE

Roepke claims that the district court erred by denying his motion to continue to allow him time to complete an evaluation for the PSR. He argues that "[i]t was necessary for the district court to have a completed sex offender evaluation available for sentencing purposes" and the PSR the court had was "missing important information that Roepke was entitled to have presented to the sentencing court for his felony conviction of a sex offense." Brief for appellant at 11. Roepke further argues that he did not waive his right to a PSR that included the sex offender evaluation, nor was it impractical to continue the sentencing hearing to allow him more time to complete the evaluation. "At most, sentencing would have been delayed for approximately one to two months to allow Probation enough time to complete the evaluation" and PSR report. *Id.* at 12.

Neb. Rev. Stat. § 29-2261(1) (Supp. 2023) states in relevant part, "Unless it is impractical to do so, when an offender has been convicted of a felony other than murder in the first degree, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation." The presentence investigation and report shall include, when available, an analysis of the circumstances attending the commission of the crime, the offender's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, and personal habits, and any other matters that the probation officer deems relevant or the court directs to be included. § 29-2261(3).

At the plea hearing on May 12, 2023, the district court scheduled sentencing for July 25, and ordered a PSR, including a sex offender evaluation. A PSR was submitted on July 18. According to the PSR, Roepke did not report for his presentence investigation interview scheduled for June 27, "and failed to contact [the probation] office ahead of time to cancel or reschedule," therefore, the PSR "was completed without a personal interview and assessments were not completed." The sentencing hearing scheduled for July 25 was continued to September 1 because Roepke had a scheduling conflict. At the hearing on September 1, Roepke sought a continuance to allow for additional time to complete the presentence investigation; over the State's objection, the hearing was continued to November 1. The court released Roepke "on his current bond with the added condition that he contact the State Probation office to begin the presentence investigation and attend all appointments as directed by Probation." Then, on November 1, Roepke again sought a continuance, claiming that he not been able to complete the sex offender evaluation in time due to lack of communication by probation.

- 5 -

There is nothing in the record to show why Roepke failed to show up for his presentence investigation interview on June 27, 2023, nor why he apparently did not contact the probation office until September 14 (at the November 1 hearing, Roepke's counsel stated that "Roepke took his paperwork in to Probation" on September 14; this was 2 weeks after the September 1 continuance). The Nebraska Supreme Court has said that "'[w]here the criminal defendant's motion for continuance is based upon the occurrence or nonoccurrence of events within the defendant's own control, denial of such motion is no abuse of discretion.'" *State v. Baxter*, 295 Neb. at 500, 888 N.W.2d at 731 (quoting *State v. Eichelberger*, 227 Neb. 545, 418 N.W.2d 580 (1988)). Based on the record before this court, the lack of a sex offender evaluation was due to Roepke's own inaction. Additionally, as pointed out by the State, "Roepke cannot show that he was prejudiced by the district court's refusal to grant his continuance" because he was "given the opportunity to bring relevant facts to the district court's attention at the sentencing hearing." Brief for appellee at 10. We conclude that the district court did not abuse its discretion when it overruled Roepke's motion to continue.

INEFFECTIVE ASSISTANCE OF COUNSEL

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Blaha, supra.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*.

In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Theisen, supra*. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.* In *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), the Nebraska Supreme Court stated, "We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity."

Roepke's appellate counsel is different from his trial counsel. He assigns as error that he received ineffective assistance of trial counsel "[d]uring the [p]endency of the [c]ase." Roepke's assignment of error does not contain the particularity required by *Mrza, supra*.

In any event, we note that Roepke argues that his trial counsel "refused to take into consideration or listen to Roepke's wishes on how to proceed with his case, including his desire to have his case brought before a jury instead of entering a plea agreement." Brief for appellant at 15. However, Roepke cannot show prejudice because at the plea hearing on May 12, 2023, the district court advised Roepke of his rights, including his right to a trial, and Roepke confirmed his understanding of his rights and that by entering a plea of no contest he was waiving his rights. Additionally, Roepke confirmed that, other than the plea agreement, no one made any threats or promises to get him to waive his rights and enter his no contest plea; Roepke also stated, "I was just scared to go to trial for more time." Because he cannot show prejudice, Roepke's ineffective assistance of counsel claim fails.

CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in denying Roepke's motion to continue sentencing and that Roepke's ineffective assistance of counsel claim fails. We therefore affirm Roepke's convictions and sentences.

AFFIRMED.